# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-537 |
| | ) | |
| Plaintiff, | ) | Judge Solomon Oliver, Jr. |
| | ) | |
| v. | ) | **DEFENDANT THOMAS BARES'S** |
| | ) | **SENTENCING MEMORANDUM** |
| THOMAS BARES, | ) | |
| | ) | |
| Defendant. | ) | |

## I.    INTRODUCTION

Defendant Thomas Bares ("Tom") submits this sentencing memorandum for the Court's consideration in determining, as it must, a sentence that is "sufficient but not greater than necessary" to accomplish the statutory objectives of sentencing as set forth in 18 U.S.C. § 3553(a). The nature of the offense and Tom's history and characteristics point to a low-end Guidelines sentence.

In addition, the Court is tasked with accurately calculating the advisory Guidelines range and imposing restitution. In the Presentence Investigation Report (Doc. 44, "PSR"), the U.S. Probation Office ("Probation") calculated the total offense level at a 12. PSR ¶ 32. This calculation is erroneous. Probation incorrectly imposed a two-level increase because it found that Tom's offense involved more than two threats, even though Tom and the government stipulated that this adjustment did not apply and even though the government only indicted Tom on a single count. Both warrant the Court sustaining Tom's objection at sentencing to this increase.[1]

What's more, the PSR erroneously concludes that Gilmour Academy and K.K. are entitled to a little over $40,000 in restitution. They are not. They principally seek to be

---

[1]    Because the PSR was expedited, "[a]ny objections to the report will be addressed at the time of sentencing." PSR at p. 19.

reimbursed for attorneys' fees they incurred in prosecuting civil litigation against Tom. But those expenses cannot be included in restitution. Instead, under a recent U.S. Supreme Court decision, these expenses must be related to the government's investigation and prosecution of the offense. *Lagos v. United States*, 138 S. Ct. 1684, 1690 (2018). Because Gilmour and K.K. seek restitution for expenses unrelated to the government's investigation, the Court should not award restitution.

For the reasons set forth below, we respectfully submit that a sentence that complies with the purposes of federal sentencing is one at the low end of the Guidelines range.

## II.     ARGUMENT

### A.     The Advisory Sentencing Guidelines

The PSR inaccurately calculates the total offense level. It does so by erroneously concluding that Tom's offense involved more than two threats, warranting a two-level increase under U.S.S.G. § 2A6.1(b)(2)(A). PSR ¶ 25. This is wrong for at least two reasons.

*First*, the government and Tom agreed in the Plea Agreement that the Guidelines calculation did not include an adjustment under § 2A6.1(b)(2)(A). To the contrary, the government and Tom stipulated that the Guidelines calculation only included the base offense level (of 12) and a downward adjustment for acceptance of responsibility. (Plea Agreement ¶ 15) (Doc. 39-1). The Court should follow the parties' stipulated Guidelines calculation—not the PSR's.

*Second*, all the conduct Probation points at to support the multiple threat adjustment, PSR ¶¶ 11-17, is subsumed within Count 1 of the Indictment, which only alleges a ***single*** threat. *See* Indictment (Doc. 11). The "threats" contemplated by § 2A6.1(b)(2)(A) have the same meaning that they have in the criminal statutes criminalizing threats, like 18 U.S.C. § 875(c). *United States v. Hoff*, 767 F. App'x 614, 621 (6th Cir. 2019) (collecting cases). Under § 875(c) and the

{01573368-2}

other criminal threat statutes, "the unit of prosecution is the telephone call or letter; each call or letter is indictable separately as a different 'threat.'" *United States v. Frazer*, 391 F.3d 866, 870 (7th Cir. 2004). The government here though did not indict each separate communication as an individual count; instead, it alleged in a single count that Tom violated § 875(c) by sending communications containing threats between August 18 and August 21, 2020—the same time frame identified in the PSR. (Doc. 11). Because the "unit of prosecution" under § 875(c) is each threatening communication and the government only alleged a single count here,[2] the Court should find that the multiple threat adjustment under § 2A6.1(b)(2)(A) is inapplicable.

**B.    Restitution**

The Court should not award restitution. The Mandatory Victim's Restitution Act (the "MVRA"), 18 U.S.C. § 3663A, "requires 'restitution to each victim in the full amount of each victim's loss[].'" *United States v. Simpson*, 538 F.3d 459, 465 (6th Cir. 2008) (quoting 18 U.S.C. § 3664(f)(1)(A)). The MVRA's purpose is essentially compensatory; "[i]ts authorization is accordingly limited to the actual, provable loss suffered by the victim and caused by the offense conduct." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012). "In determining the amount of restitution, the Government must prove the losses by a preponderance of the evidence and the court must find that the defendant's criminal conduct directly and proximately caused the actual or intended loss to the victim." *United States v. Fowler*, 819 F.3d 298, 307 (6th Cir. 2016). Although the Court "need not make specific findings in calculating restitution, the information

---

[2]    Relevant conduct is irrelevant. The Guidelines instruct that in "determining whether" the multiple threat adjustment applies, "the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole." U.S.S.G. § 2A6.1 cmt. n.1. In this case, the PSR does not identify any conduct that occurred before the offense. The PSR only identifies conduct that occurred during the offense, which, as explained above, only amounts to a single threat.

{01573368-2}

relied upon by the district court in reaching the final calculation must have sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotation marks omitted).

Only the items specifically enumerated in § 3663A(b) can be included in a restitution order. "It is apparent from the text of § 3663A that unlisted harms are not compensable in restitution. Because courts have no inherent authority to order restitution, Congress must provide the authority. Congress did so through the MVRA, but chose to include only the four categories of harms listed in § 3663A(b). If Congress intended to include all harms directly and proximately caused by a defendant's offense, it could have done so with wording more simple and categorical." *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014) (internal citations omitted).

The PSR errs in concluding that Gilmour Academy and K.K. are entitled to, collectively, $41,581.83 in restitution, PSR ¶ 81, to "compensate the cost of legal fees and instillation/operation of security systems at Gilmour Academy and at [K.K.'s] personal residence," *id.* ¶ 20. It errs in three fundamental ways. First, by concluding that Gilmour's attorneys' fees are recoverable under the MVRA (they are not). Second, by concluding that Gilmour and K.K. can recover for damages allegedly incurred ***before*** Tom's offense (they cannot) and ***after*** Tom's offense (they cannot). And, third, by concluding that Gilmour's and K.K.'s expenses can be included in a restitution order even though those expenses are not specifically listed in § 3663A(b).

### 1.      *Gilmour's attorneys' fees cannot be included in the restitution order.*

A victim cannot recover in restitution for either consequential damages, like attorneys' fees, or for attorneys' fees that were not incurred as a necessary expense during the government's investigation and prosecution of the offense.

Start with consequential damages. "Generally, attorney fees incurred in civil litigation against the defendant for the same acts at issue in the criminal proceedings are consequential damages that are not recoverable." *United States v. Elson*, 577 F.3d 713, 728 (6th Cir. 2009). The exception to this rule permits the victim to recover for its attorneys' fees when the "defendant's overt acts forming the basis for the offense of conviction involved illegal acts during the civil trial, such as perjury." *Id.* (citing *United States v. DeGeorge*, 380 F.3d 1203, 1221-22 (9th Cir. 2004)). This exception is not applicable here. Gilmour instead seeks attorneys' fees that it incurred before Tom's offense and for fees that it incurred in prosecuting civil litigation against Tom. Neither is recoverable. *Lagos v. United States*, 138 S. Ct. 1684, 1690 (2018) (expenses incurred before government's investigation are not recoverable); *United States v. Saad*, 544 F. Supp. 2d 589, 592 (E.D. Mich. 2008) (expenses incurred in prosecuting civil lawsuit against defendant are not recoverable).

Next, consider 18 U.S.C. § 3663A(b)(4). Under the MVRA, the Court is required to order restitution to "reimburse the victim for … necessary … expenses incurred during participation in the *investigation* or *prosecution* of the offense." 18 U.S.C. § 3663A(b)(4) (emphasis added). This section, though, does not apply. A few years ago, the U.S. Supreme Court held[3] that the italicized words "are limited to government investigations and criminal proceedings." *Lagos v. United States*, 138 S. Ct. 1684, 1688 (2018). Thus, a court cannot order restitution for expenses incurred during a victim's private investigation of the offense, *id.* at 1687, or for expenses the victim incurs that are not remotely similar to lost income, child care expenses, or transportation expenses, *United States v. Koutsostamatis*, 956 F.3d 301, 308 (5th Cir. 2020) (holding district

---

[3]     In doing so, the Supreme Court overruled, in part, the Sixth Circuit's decision in *United States v. Elson*, 577 F.3d 713, 726 (6th Cir. 2009). *See United States v. Sexton*, 894 F.3d 787, 800 (6th Cir. 2018) (recognizing that *Lagos* "abrogated *Elson*").

{01573368-2}

court erred in including expenses victim incurred in retaining digital security team and outside contractors to investigate defendant's offense).

With these legal principles in mind, the Court should not include Gilmour's attorneys' fees in the restitution order. To start, Gilmour requests attorneys' fees incurred before the government's investigation began. *See* Doc. 44-2, Doc. 44-4. *Lagos* forbids awarding attorneys' fees "incurred *before* the victim's participation in a government's investigation began." 138 S. Ct. at 1690. As such, Gilmour cannot recover for fees that it incurred before the government began investigating Tom in August 2020.

Gilmour also requests attorneys' fees it incurred in seeking a civil protection order for K.K. *See* Doc. 44-3. "[T]here is no authority for the proposition that when a victim pursues separate civil litigation against a defendant, arising from the defendant's criminal conduct, the costs and attorney fees incurred in that civil litigation can be recovered as restitution in the criminal case." *United States v. Saad*, 544 F. Supp. 2d 589, 592 (E.D. Mich. 2008). The Court should decline to award Gilmour attorneys' fees that it incurred when it pursued separate civil litigation against Tom.

Finally, the Fifth Circuit's analysis in *Koutsostamatis* is instructive. There, the Fifth Circuit applied the Supreme Court's *Lagos* decision and found that the district court erred in awarding restitution for expenses the victim incurred in investigating the defendant's crime. *Koutsostamatis*, 956 F.3d at 303. The Fifth Circuit held that even though the victim incurred these expenses as part of the government's investigation, the expenses (for a digital security team and outside consultants) were not "other expenses" within the meaning of § 3663A(b)(4). *Id.* at 306. This was so, according to the Fifth Circuit, because "other expenses" is tied to "the preceding list of specific, enumerated expenses" in § 3663A(b)(4). *Id.* Thus, to be included in a

6

restitution order, the "other expenses" must be similar to "the kind of expenses that a victim would be likely to incur when he or she . . . misses work." *Id.* (quoting *Lagos*, 138 S. Ct. at 1688); *see id.* ("Think about it: The costs of a babysitter, a tank of gas, a parking meter—and a 44-person digital security team. One of these things is not like the others. In our view, that is plain from the text of § 3663A(b)(4)."). Just like in *Koutsostamatis*, the costs that Gilmour and K.K. seek to recover (attorneys' fees and the instillation of security cameras) are not the kinds of expenses that a victim is likely to incur when she misses work. Those expenses, thus, cannot be included in the restitution order.

At bottom, the Court should not include the attorneys' fees Gilmour and K.K. incurred in a restitution order.

> **2.  *Gilmour and K.K. cannot recover in restitution for losses not caused by the specific conduct that is the basis for Tom's conviction.***

The MVRA does not permit losses that occurred **before** the offense of conviction to be included in a restitution order. "Where an offense does not involve damage to or loss or destruction of property the MVRA requires only that the restitution ordered by the district court be based on losses caused by the specific conduct that is the basis for the offense of conviction." *United States v. Sexton*, 894 F.3d 787, 800 (6th Cir. 2018) (cleaned up). In other words, to award restitution, the Court must find that the victim's losses were caused by the offense conduct. In this case, the offense conduct is Tom's threatening communications sent between August 18 and August 21, 2020. (Doc. 11); PSR ¶¶ 11-17. Yet, Gilmour and K.K. seek restitution for expenses incurred two years earlier and two months after this conduct. The Court should reject their attempt.

The Court should not order restitution for Gilmour's purchase of a security camera two years before Tom's offense. Gilmour seeks $1,267.33 for the purchase of an exterior security

camera, Doc. 44-1 at 3, that it purchased in July 2018—two years before Tom's offense, Doc. 44-5 (Amazon orders showing order date of July 23, 2018). The Court, however, can only order restitution "based on losses caused by the specific conduct that is the basis for the offense of conviction." *Sexton*, 894 F.3d at 800 (cleaned up). Tom's offense conduct occurred in August 2020, not July 2018. The Court should not award restitution based on alleged losses that occurred before the conduct that is the basis for the offense of conviction.

For similar reasons, the Court should not order restitution for Gilmour purchase of a panic button and exterior security cameras months after Tom's offense. In the middle of October 2020—two months after Tom's offense—Gilmour spent $3,105 to purchase a security camera, Doc. 44-6, and in early November 2020, it spent $228.68 to purchase a panic button, Doc. 44-7. Neither of these expenses are recoverable in restitution. They are expenses incurred after the specific conduct that is the basis for the conviction.

### 3. Gilmour's and K.K.'s expenses are not listed in § 3663A(b).

A restitution order can only include the expenses specifically enumerated in § 3663A(b). *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014). "As a preliminary limitation, where the victim does not suffer bodily injury or death, only two categories of damages are recoverable under the MVRA: (1) 'damage to or loss or destruction of property' and (2) 'necessary . . . expenses incurred during . . . investigation or prosecution . . . of the offense.'" *United States v. Hatfield*, No. 06-CR-0550 (JS)(AKT), 2015 U.S. Dist. LEXIS 190029, at *10 (E.D.N.Y. Mar. 27, 2015) (quoting 18 U.S.C. § 3663A(b)(1), (4)). In this case, Gilmour's and K.K.'s attorneys' fees and expenses for installing security cameras do not evidence "damage to or loss or

destruction of property." Thus, they are only recoverable if they are necessary expenses incurred during the investigation or prosecution of the offense.[4]

They are not. *Lagos* makes clear that to be recoverable under the MVRA under the expenses must be related to the government's investigation and prosecution of the offense. 138 S. Ct. 1684, 1688 (2018). Gilmour's and K.K.'s attorneys' fees and instillation of security cameras and other equipment are not expenses related to the government's investigation and prosecution of the offense. And, as explained above, the Court should follow the Fifth Circuit's lead and hold that the other expenses compensable under § 3663A(b)(4) must be similar to "the kind of expenses that a victim would be likely to incur when he or she . . . misses work." *United States v. Koutsostamatis*, 956 F.3d 301, 308 (5th Cir. 2020) (quoting *Lagos*, 138 S. Ct. at 1688). Gilmour and K.K.'s attorneys' fees and expenses incurred to install security cameras are not similar and cannot be included in a restitution order.

### C. The § 3553(a) Sentencing Factors

The advisory Guidelines calculation discussed above is only one of the many factors the Court must consider in crafting a sentence. After all, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). Instead, a sentencing court must consider the advisory Guidelines calculation in conjunction with the factors to be considered in imposing a sentence that Congress established. 18 U.S.C. § 3553(a).

With this in mind, we turn to the § 3553(a) sentencing factors. In doing so, we are mindful that a sentencing court must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the

---

[4] Gilmour's and K.K.'s expenses are not lost income, child care expenses, or transportation expenses.

crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007). A sentence

that varies from the advisory Guideline range may be based on "an individualized determination

that [the Guidelines] yield an excessive sentence in a particular case." *Spears v. United States*,

555 U.S. 261, 264 (2009).

### 1. The nature of the offense and Tom's history and characteristics favor a low end of the Guidelines sentence.

Tom pleaded guilty, accepting responsibility for his actions. He has been held in

continuous federal custody since August 22, 2020.

Under Section 3553(a)(1), the Court must consider Tom's specific history and personal

characteristics, which are even more exceptional than the nature and circumstances of his

offense. To begin with, before this conviction, Tom had never faced scrutiny through any

criminal, civil, or regulatory action whatsoever. This matters at sentencing, where the

"punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S.

476, 487-88 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). As one court has

explained:

> [S]urely, if ever a man is to receive credit for the good he has done,
> and his immediate misconduct assessed in the context of his
> overall life hitherto, it should be at the moment of his sentencing,
> when his very future hangs in the balance. This elementary
> principle of weighing the good with the bad, which is basic to all
> the great religions, moral philosophies, and systems of justice, was
> plainly part of what Congress had in mind when it directed courts
> to consider, as a necessary sentencing factor, "the history and
> characteristics of the defendant."

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006).

Tom has an exceptional record of charity, community service, and other good works,

which can be a significant factor at sentencing and should be a mitigating factor here.

Consideration of such good works is completely appropriate in fashioning a sentence under §

3553. *See, e.g.*, *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013); *United States v. Crouse*, 145 F.3d 786, 791 (6th Cir. 1998) To this end, Tom spent close to a decade of his life as a volunteer teacher at Gilmour in its AV department. PSR ¶ 61. He also donated substantial monies to Gilmour even after he stopped volunteering.

The Court should consider Tom's personal characteristics along with the circumstances that gave rise to his offense in fashioning a sentence under § 3553.

> ### 2. *Retribution, deterrence, incapacitation, and rehabilitation militate in favor of low-end Guidelines sentence.*

Section 3553(a)(2) instructs district courts to consider the need for the sentence imposed to achieve several overarching sentencing purposes, which the Supreme Court has summarized as "retribution, deterrence, incapacitation, and rehabilitation." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018) (internal quotation marks and citation omitted). "District courts must determine in each case what constitutes a sentence that is 'sufficient, but not greater than necessary,' 18 U.S.C § 3553(a), to achieve [these] purposes." *Id.* The Supreme Court recognized in *Gall* that in some cases, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quoting district court opinion). The need for severe punishment further diminishes here when considering the nature of the offense, Tom's personal characteristics, and the fact that Tom has been detained since August 2020.

As for specific deterrence, Tom's age (53) and (lack of) criminal history show that he is no danger to the community and is not likely to recidivate. *See Recidivism Among Federal Offenders: A Comprehensive Overview* at 23, United States Sentencing Commission, available at https://bit.ly/2OwfdIT (Mar. 2016); *The Past Predicts the Future: Criminal History and*

*Recidivism of Federal Offenders* at 6, United States Sentencing Commission, available at

https://bit.ly/2B4CsXi (Mar. 2017) (finding that defendants "with zero criminal history points,"

like Tom, "had a lower rearrest rate than offenders with one criminal history point"). This is a

conclusion that the Sixth Circuit has recognized: "observers of the criminal justice system have

long acknowledged the key argument that elderly offenders pose so low a risk to the public that

long or otherwise harsh sentences have little to no utilitarian benefit." *United States v. Payton*,

754 F.3d 375, 379 (6th Cir. 2014) (vacating 45-year sentence) (internal citations omitted).

Any sentence the Court imposes must also "afford adequate deterrence to criminal

conduct" and "protect the public from further crimes of the defendant." § 3553(a)(2)(B)–(C).

Tom is simply not a threat to the public, and no public interest is served by meting out harsh

punishment.

### 3. *The need to avoid sentencing disparities.*

In weighing potential sentencing disparities, this Court should look beyond sentences

imposed within this district and consider how sentences have been imposed nationwide in similar

cases. *See United States v. Frazier*, 547 F. App'x 729, 737 (6th Cir. 2013). The sentencing data

made available by the United States Sentencing Commission is particularly helpful to determine

nationwide sentencing norms and averages in money laundering cases. *See, e.g.*, *United States v.

Smith*, No. 1:06-CR-00394, 2009 WL 2497174, at *5 n.1 (N.D. Ohio Feb. 2, 2009) ("[T]he court

finds the statistics to be helpful in providing a rough sketch or sentencing norms and averages.")

For the Fourth Quarter of Fiscal Year 2020, the Commission reported that there were 224

stalking/harassment offenses. *See 4th Quarter Data Report* at 17, United States Sentencing

Commission, available at https://www.ussc.gov/sites/default/files/pdf/research-and-

publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-

2020_Quarterly_Report_Final.pdf (last visited May 24, 2021). Of these, 53.1% of offenders received sentences within the Guidelines range. *Id.* at 17 (Table 10).

## III.    CONCLUSION

To achieve justice, criminal justice must have a conscience. It must have a sense of what is right, and what is wrong—in light of the unique characteristics of each criminal defendant and the interests of society as a whole. We respectfully submit, for all the reasons detailed above, that keeping Tom in prison would not achieve justice. A sentence that is sufficient but not greater than necessary to further the purposes of 18 U.S.C. § 3553(a)—one that would achieve justice— is, we submit, a sentence at the low-end of the applicable advisory Guidelines range.

Dated: May 25, 2021                                           Respectfully submitted,

*/s/ Steven L. Bradley*             
Steven L. Bradley (0046622)
MAREIN & BRADLEY
526 Superior Ave.
Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com

*/s/ Nicholas R. Oleski*           
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., LPA
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio 44115
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Defendant Thomas Bares*

13

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed on May 25, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Nicholas R. Oleski*
Nicholas R. Oleski (0095808)

{01573368-2}